IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 11-61-M-DLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| JASON WASHINGTON, | ) | |
| DARIN MOWER, | ) | |
| GREGORY ZUCKERT, | ) | |
| STEVEN SANN, | ) | |
| LISA FLEMING, | ) | |
| JESSE SHEWALTER, and | ) | |
| CHRISTOPHER CRONSHAW, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I. Introduction**

The United States has filed a motion to quash Defendant Steven Sann's subpoena commanding United States Attorney General Eric Holder to appear and

1

testify at the August 6, 2012, hearing on the pending motions in this matter. Defendant Sann opposes the motion, and argues that the Attorney General's testimony is necessary to allow him to develop a factual record in support of his motions to dismiss based on the doctrines of official misleading, promissory estoppel, and judicial estoppel. For the reasons that follow, the motion to quash is granted.

## II. Analysis

**A.    Legal Standard**

Rule 17(c)(2) of the Federal Rules of Criminal Procedure allows for a motion to quash or modify a subpoena if compliance would be unreasonable or oppressive.[1] Heads of government agencies are not generally subject to subpoena, Kyle Engineering Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979), and they may only be compelled to appear and testify under narrow circumstances. The test requires the party seeking to compel the official's testimony to show that "the

---

[1] Rule 17(c)(2) does not specify by whom the motion must be made, and the Court here takes the opportunity to reject Defendant Sann's argument that the "Federal prosecutor" lacks standing to move to quash the subpoena of the Attorney General. To the contrary, the very case cited by Sann in support of his argument states, "A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982). The movant in this case is the United States, and the Attorney General is its chief law enforcement officer. Mitchell v. Forsyth, 472 U.S. 511, 520 (1985). As is discussed in greater detail below, the challenged subpoena implicates the legitimate interests of both the local federal prosecutor and the Attorney General. The United States has standing to bring the instant motion.

agency head possesses particular information necessary to the development or maintenance of the party's case, which cannot be reasonably obtained by another discovery mechanism[.]" American Broadcasting Companies, Inc. v. United States Information Agency, 599 F. Supp. 2d 765, 769 (D.D.C. 1984). Extraordinary circumstances must be present before an agency head may be compelled to testify regarding the reasons for taking official actions. United States v. Morgan, 313 U.S. 409, 422 (1941). The Court will therefore grant the motion to quash unless Defendant Sann can demonstrate that the Attorney General possesses particularized information containing facts that are necessary to the presentation of Sann's motions to dismiss, and that the same facts cannot be obtained through any other means. Although the following analysis requires the Court to consider the elements of Defendant Sann's various dismissal theories, nothing contained herein should be taken as an indication of the Court's view of the merits of the pending motions to dismiss, the resolution of which will occur after the Court hears the parties' arguments at the August 6, 2012, hearing.

    **1.**     **Estoppel by Official Misleading Statement**

Defendant Sann first argues that the Attorney General's testimony is necessary to support his motion to dismiss based on estoppel by official misleading statement, also referred to in the Ninth Circuit as entrapment by

estoppel. United States v. Batterjee, 361 F.3d 1210, 1217 n.6 (9th Cir. 2004). The defense requires the accused to show that "(1) an authorized government official, empowered to render the claimed erroneous advice, (2) who has been made aware of all the relevant historical facts, (3) affirmatively told him the proscribed conduct was permissible, (4) that he relied on the false information, and (5) that his reliance was reasonable." Id. at 1216 (internal quotations and citations omitted).

Stated briefly, Sann's argument for estoppel by official misleading is that he reasonably relied on public statements made to the press or to Congress by then-Senator Obama and his campaign spokesman, and later by President Obama's White House spokesman and United States Attorney General Eric Holder, as well as the guidance memorandum issued by the Deputy Attorney General David Ogden (the "Ogden Memo"), all of which Sann says constituted a promise to him that he would not be subject to federal prosecution for operating a medical marijuana dispensary in conformity with state law.

Defendant Sann maintains that the Attorney General is uniquely positioned to offer testimony on the following subjects relative to his estoppel by official misleading statement defense:

1. Whether President Obama personally authorized the Attorney

> General to make the misleading statement that what President Obama had promised during his campaign was now "American Policy" and, if so, what President Obama said when he authorized the statement;
>
> 2. Whether the Attorney General was personally aware of the historical context and facts relevant to his statement and, if so, what was the scope and nature of the Attorney General's knowledge, including, without limitation, his knowledge related to the practice of past Presidential administrations, the number of states which had medical marijuana laws, the nature of those laws, what the media was reporting [the] Attorney General as saying, and the extent of his knowledge of the phenomenon noted in the media as the "Green Rush" in reaction to the Attorney General's statements;
>
> 3. Whether the Attorney General personally authorized AUSA Quinlivan, as his legal counsel, to make the representations AUSA Quinlivan made to Judge Fogel and to enter into the stipulation, both of which favorably affected Judge Fogel's decision to dismiss a civil case against the Attorney General, and, if so, the extent of the Attorney General's authorization; and,
>
> 4. Whether the statements attributed to the Attorney General or someone acting on his behalf in newspaper and periodical articles, video recordings, and congressional and judicial transcripts, are true and complete recitations of what the person stated or wrote and, if not, what the person actually said or wrote.

Response Brief (Doc. No. 280) at 14-15.

None of these reasons satisfies the test for compelling the testimony of a high-ranking federal official. As to the first matter, it is irrelevant whether any of the Attorney General's statements were authorized by President Obama. There can be no serious dispute that the Attorney General of the United States is "an

5

authorized government official" for purposes of the test set forth in <u>Batterjee</u>. Moreover, discussion of any statements from the President to the Attorney General would likely require the Attorney General to testify as to the reasons for official actions, which is impermissible under <u>Morgan</u>.

As to the second matter, the "relevant historical facts" for purposes of the <u>Batterjee</u> test are those relating to Sann's medical marijuana operation, not those relating to the development and present status of federal and state law and policy on medical marijuana. In any case, a general understanding of the latter may fairly be imputed to the Attorney General based on the nature of his office, and need not be established by his personal testimony. Sann has not alleged that the Attorney General had any personal knowledge of the manner in which Sann conducted his medical marijuana business, leaving the Court no basis to conclude that the Attorney General has relevant testimony to offer on that point. Finally, it is not relevant to any element of the <u>Batterjee</u> test whether the Attorney General had any knowledge of how the media reported on his comments.

The third matter goes to whether the Attorney General authorized an assistant United States attorney to make certain representations in a California federal district court case, as is described in greater detail below in the discussion of the motion to dismiss under the doctrine of judicial estoppel. Again, the

government does not base its opposition to that motion to dismiss on an argument that an assistant United States attorney is not an authorized official, and if necessary, the Court is confident that such authorization can be established by means short of compelling the physical presence of the Attorney General.

With respect to the fourth matter, the United States has not contested the accuracy of the statements attributed to the Attorney General, and the Court is satisfied that the precise content of the statements at issue can be established to a reasonable degree of certainty without involving the Attorney General, who is likely not in a position to testify from personal knowledge about the precise language of public statements made by anyone but himself.

As it relates to his motion to dismiss based on estoppel by official misleading statements, Defendant Sann has failed to show that the Attorney General possesses necessary facts that cannot be obtained through other means.

**2. Promissory Estoppel**

Defendant Sann has filed a motion to dismiss based on the doctrine of promissory estoppel. Although Defendant Sann cites no Ninth Circuit authority affirming the availability of promissory estoppel as a defense to criminal charges, other circuits have entertained promissory estoppel theories in considering the enforceability of agreements made in criminal cases. See, e.g., Cooper v. United

States, 594 F.2d 12, 16 (4th Cir. 1979) (considering defendant's promissory estoppel argument in the context of a plea agreement); United States v. Weaver, 905 F.2d 1466, 1474 (11th Cir. 1990) (discussing promissory estoppel in relation to an immunity agreement). Because this is an area in which courts import civil contract principles into the criminal arena, the Ninth Circuit's civil promissory estoppel standard supplies the relevant elements. The promisee must show: "(1) the existence of a promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise." Aguilar v. Intl. Longshoremen's Union Loc. # 10, 966 F.2d 443, 445 (9th Cir.1992). The promise must be "clear and unambiguous." Id. at 446 (citations omitted).

Sann's promissory estoppel theory relies on essentially the same facts as his defense of entrapment by official misleading statement. Sann asserts that the Attorney General's testimony on the following topics is necessary to his motion:

> 1. Whether the statements attributed to the Attorney General or someone acting on his behalf in newspaper and periodical articles, video recordings, and congressional and judicial transcripts, are true and complete recitations of what the person stated or wrote and, if not, what the person actually said or wrote;
>
> 2. Whether the Attorney General Holder had a grasp of the relevant

facts and law when he made or authorized the statements and commitments and, if so, what his understanding of both was; and

3. Whether the Attorney General was aware when he made the relevant statements and commitments that it was foreseeable that Mr. Sann and other citizens might reasonably rely or actually had reasonably relied on what the Attorney General said by:

> 1. registering as referring physicians, providers or medical marijuana patients in compliance with a state medical marijuana law;
>
> 2. lending money to a medical marijuana dispensary;
>
> 3. investing money in a medical marijuana dispensary; or
>
> 4. leasing space to a medical marijuana dispensary and, if so, the extent of his awareness; and

4. Whether the Attorney General was aware of what the media was reporting he and his representatives had said to the American public, Congress and Judge Fogel and, if so, the extent of his knowledge[.]

Doc. No. 280 at 16-17.

None of the listed subjects has any bearing on the elements required to invoke the doctrine of promissory estoppel. The first and fourth matters comprise essentially the same testimony as was sought pursuant to the defense of estoppel by official misleading statements, and are unpersuasive for the reasons the Court articulated above. Whether the Attorney General "had a grasp of the relevant facts and law" does not relate to any of the elements of promissory estoppel, thus

9

rendering the second matter an insufficient basis to compel testimony. The third matter is likewise insufficient because whether the promisor should have reasonably expected the promisee to rely on the promise is an objective question, and does not require inquiry into the Attorney General's subjective expectation of reliance or lack thereof.

Defendant Sann has failed to show that the Attorney General possesses necessary facts that cannot be obtained through other means with regard to his motion to dismiss based on the doctrine of promissory estoppel.

### 3. Judicial Estoppel

The doctrine of judicial estoppel in intended to protect the integrity of the judicial process by prohibiting a party from gaining an advantage in litigation by one theory and then seeking an inconsistent advantage by later pursuing an incompatible theory. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Judicial estoppel is an equitable doctrine invoked at the district court's discretion. The factors to be considered include: 1) whether a party has taken a position in litigation that is clearly inconsistent with its earlier position; 2) whether the party succeeded in persuading the court to adopt its earlier position; and 3) whether, in the absence of estoppel, the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party.

Id. at 750-51.

Defendant Sann contends judicial estoppel should apply here because the United States took a position contrary to its position in this case in County of Santa Cruz v. Holder, Civil Action No. 03-1802 JF (N.D. Cal. 2009). The plaintiffs in Santa Cruz sought to enjoin federal raids of medical marijuana providers, but stipulated to dismiss their case upon the issuance of the Ogden Memo. Sann argues that in Santa Cruz, the United States took the position that it would not prosecute medical marijuana providers acting in conformity with state law in order to obtain the benefit of a stipulation to dismiss, and that it should be judicially estopped from taking a contrary position in this case.

Sann intends to question the Attorney General on the following matters, which he argues is necessary to support his motion:

> 1. Whether the statements attributed to the Attorney General and those acting on his behalf in newspaper and periodical articles, video recordings, and congressional and judicial transcripts, are true and complete recitations of what the speaker stated and, if not, what was actually said;
>
> 2. Whether the Attorney General had President Obama's authority to authorize the implementation of the Medical Marijuana Guidance written into the Ogden Memo and, if so, the extent of that authority;
>
> 3. Whether the Attorney General authorized or ratified the Medical Marijuana Guidance incorporated in the Ogden Memo and if so, the extent of the Attorney General's authorization or ratification;

4. Whether the Attorney General authorized or ratified the representations AUSA Quinlivan made to Judge Fogel and to Plaintiff's counsel in order to obtain a dismissal of the lawsuit, endorsed by Judge Fogel and, if so, the extent of that authorization or ratification;

5. Whether the Attorney General authorized AUSA Quinlivan to enter into and sign the Stipulation on the Attorney General's behalf, which then resulted in Judge Fogel's ORDER of dismissal and, if so, the extent of that authorization;

6. Whether the Attorney General knew that by authorizing AUSA Quinlivan to make the foregoing representations and enter into the stipulation he would gain an advantage in the County of Santa Cruz lawsuit by Judge Fogel dismissing the complaint;

7. Whether the Attorney General authorized or ratified the United States Attorney's Office for the State of Montana to Prosecute Mr. Sann, and perhaps others who complied with the MMMA and the Ogden Memo, and thereby take a position with other United States District Court Judges for the District of Montana and this Court which is diametrically opposed to the position the Attorney General took and upon which Judge Fogel relied in the County of Santa Cruz matter and, if so, the extent of that authorization or ratification; and

8. With respect to whether the Prosecution will derive an unfair advantage if allowed to persist in the legal position it has taken in this case, whether the Attorney General would utilize a favorable ruling by this Court as a basis for arguing the Court has condoned the Department of Justice's continued prosecution of other individuals in this and other states even though the individuals have complied with state medical marijuana laws and the Ogden Memo and, if so, the extent to which the Attorney General would continue to engage in this tactic, thereby affording the United States an opportunity to seek additional forfeitures under the Controlled Substances Act (CSA).

Doc. No. 280 at 18-19.

None of the listed lines of inquiry are likely to elicit facts necessary for the Court's consideration of the motion to dismiss based on the doctrine of judicial estoppel. The doctrine applies to positions taken in litigation. It is irrelevant whether any attorney was authorized to take a certain position; all that matters is whether the position was taken, whether the court was persuaded by the position, whether a subsequent position taken by the same party is to the contrary, and whether a resulting unfair disadvantage or detriment would fall on the opposing party. As to that last element, Sann must show that he personally will be unfairly disadvantaged by the government's change of position, which is a matter on which the Attorney General possesses no unique insight. The facts upon which the Court must decide the motion consist of nothing more than the respective records of the two cases in which the United States is alleged to have taken contrary positions.

### III. Conclusion and Order

Defendant Sann has failed to show that the Attorney General possesses any relevant information, the knowledge of which is unique to him, in connection with any of Sann's pending motions to dismiss. Sann has therefore failed to meet the high threshold for disrupting the busy schedule of the head of a federal agency to

compel his physical presence and testimony.[2]

Based on the foregoing, IT IS HEREBY ORDERED that the United States' motion to quash the subpoena of Attorney General Eric Holder (Doc. No. 217) is GRANTED, and the subpoena is hereby QUASHED. Attorney General Holder is free from any command to appear and testify in the District of Montana in connection with this matter.

IT IS FURTHER ORDERED that the United States' motion for expedited ruling (Doc. No. 242) is GRANTED by the issuance of this Order.

Dated this 26th day of July, 2012.

_____
Dana L. Christensen, District Judge
United States District Court

---

[2] Putting aside the higher standard applicable to high-ranking officials such as the Attorney General, it would not be an efficient use of the limited time available for hearing on the pending motions to allow for the in-court presentation of testimony and other evidence that is irrelevant to the Court's consideration of the pending motions. In furtherance of that principle, and for the benefit of the parties and their counsel, the Court will issue a subsequent order further limiting the presentation of testimony and other evidence at the hearing to those matters that the Court deems relevant to the legal issues to be decided.